Good morning, Your Honors, and may it please the Court. I'm Elizabeth Newman, representing Mr. Austin. Your Honors, I see the Court has already heard some argument about when or if a special unanimity instruction is ever required, and so I'll begin there and say that under this Court's case law post-Chad, I think the case law is clear in this Court that a special unanimity instruction may be given when there's a genuine possibility of juror confusion. This Court said that in the Kim case in 1999, which post-States Shad by eight years. It said it in the McCormick case, which post-States Shad by four years. And in neither of those cases was the prime one in which the special unanimity instruction was requested to go to an actual element of the offense. Now, counsel, the instruction here was with all of you agreeing on the particular act that amounted to the assaulting or resisting, et cetera. Yes. And why isn't that good enough? The reason that's not good enough, Your Honor, is that it's not very clear. The particular act is not a clear statement of what the juror was actually being asked to find. The government — Well, if it had been any more specific, it would have amounted to a comment on the evidence, and then you'd be complaining that there's a comment on the evidence. No, Your Honor. I think that if the district court had given the special interrogatory or the special verdict form that the defense proposed, then we would not be arguing this issue on appeal at all. Now, in your special verdict form, what did you say? The special — the defense's special verdict form asked — it's on page 104 of the excerpts, Your Honor, and it says as to count one, which is the count that we're concerned about here, item one, we, the jury, unanimously find the defendant, Gene Austin, guilty of the crime of assault. If you answer guilty, go on to item two and three. And we, the jury, this is item two, unanimously find that Mr. Austin committed the following acts, which constituted an intentional assault of Lieutenant Blunt. A, pulling hair, B, pushing, C, putting in headlock. So, Your Honor, if we — if the district court had actually given that special verdict form, we would not be arguing that there was any comment on the evidence. Those were the three — those were the three pieces of conduct that the government had initially described when the defense made an oral motion for a bill of particulars. But what could particular act mean to the jury? Well, Your Honor, this case involved a lot of dispute about what kind of crime this was. I don't mean in its physical actions, but whether the assault was a continuous — whether one assault is a continuous series of events or not. And the jury might have concluded that with each of you agreeing on the particular act might very well mean with each of you agreeing that he did all of the things that were described by the various witnesses. But this is in the singular, particular act. No, I think it actually says, Your Honor — well, if it does say particular act and not particular acts, and the jury decided that a particular act was a singular thing rather than a singular course of things, then the jury might have concluded that particular act meant one of what the Supreme Court and this Court and what lawyers call, you know, but the jury wouldn't know, the statutory means, the impeding, the obstructing, the assaulting. That particular act was also something that they could conceivably have decided was meant by the district court's jury instruction with each of you agreeing on the particular act. I think the Court acted very commendably in giving the defense a very good trial and seriously considering this issue and trying to fashion a solution to the problem. But the Court's solution was not really a solution because it left just as much confusion as had existed when the parties or when the defense first raised the issue. And that's where the harm is, Your Honor, and that's why the unanimity instruction was not sufficient. As to whether, as to harmlessness, Your Honor, this is a case in which there was a petite, as described by the government in their opening statement, certainly not refuted, a petite woman who was a prison guard, had an unpleasant encounter and ended up hurt by this prison inmate. This is one of the reasons why this is one of these special cases, nonroutine cases in which a specific unanimity instruction is desirable. Well, what's the petiteness have to do with this? Well, I'm sorry, Your Honor. Let me link that up, that the jury could have thought, look, she ended up hurt. She testified about how hurt she was physically, and he must have, and he did something. He must have done something because she's hurt. But that has nothing to do with unanimity. That just has to do with whether the jury followed its instructions to have actually found the elements of the crime. Well, not necessarily, Your Honor. With respect, I would disagree with that partially, in that if the jury was required to link up what it found Mr. Austin actually did with what it might have found Lieutenant Blunt's injuries actually were, that's the meaning of what the jury instructions in the statute actually require. But without the specific unanimity instruction, it wasn't actually required to focus and make that link, and could have thought just generally, look, she got hurt. But that's a separate element, that the jury was told that separately in Instruction 6 that he had to have inflicted bodily injury. That's a separate element that he was resisting, opposing, intimidating, et cetera. It's a separate element of the forcible assault, Your Honor, but it's all part of the statute under which he was convicted. And so if they're required to be unanimous about what he did, I'm interrupting you. No, I'm interrupting you, but I just don't understand what more the court could have said, assuming it even needed to do this at all, requiring all of you agreeing on the particular act. That's what it says. Yes. All of you agreeing on the particular act. That's pretty clear to us with our legal education. But here are 12 jurors without the benefit of anything. That's plain English. There's nothing legal about that. It's English. Of course it's English, Your Honor, in only three letters. But it's still susceptible to a number of different interpretations. Like, what is – what act are we talking about? Only to a lawyer is it susceptible of more than one interpretation. Respectfully, Your Honor, I would argue that it was certainly – that it was susceptible to different interpretations by jurors who are told that he – that the statute says he impeded or instructed or obstructed or interfered or assaulted. I mean, which act are we talking about here? I think that's – at least that's our position that that's what the problem was. I think we understand your position. Unless the court has further questions. No. Always in the balance of your time. Thank you. Thank you. Hello again. Jean Claude Andre on behalf of the United States. The court gave an instruction in this case that it didn't have to give in the first place. Under Schad, as we discussed quite a bit already this morning, the jury wasn't required to agree unanimously on which group facts satisfied the resisting, impeding, basically the assaultive act element of the assault statute here. In fact, what the district court did by giving the instruction that it gave was made it more difficult for the government to prove its case. Now, we live with that. We didn't take Judge Larson up on mandamus. But because the judge's instruction didn't insert any confusion into the case, there's no error here for – from which the defendant can benefit. Again, if there was an error at all, it was an error in increasing the government's burden. But as I mentioned, the government was fine living with that. The key reason why there's no problem under Schad is to, again, use that term that we've been talking about, unit of prosecution. It's very clear here that when you have a brawl, the unit of prosecution is the brawl or the victim. We cited a number of cases from around the country, from other circuits, that established that when you have some temporal break in – between multiple assaultive acts, then you might have two assaults. But if you have a brawl, then you have one assault. And if the defendant's position was correct, that there were multiple assaults because the defendant hugged the defendant below his hair, and that's one assault, and then pushed her up against the wall, and that's another assault, then his total statutory maximum penalty would be doubled, and I'm sure we'd be hearing a complaint about that. We probably also would have seen a multiplicity challenge in the district court. You know, counsel, there's an old saying, don't shoot a dead duck twice. I think you understand the Court's position here. Thank you, Your Honor. Unless the Court has a question, then I'm submitting. A hunter who takes a hint. Your Honor, unless the Court has any further questions of me, I think I will submit on the balance of my time.  Thank you, Your Honor.  All right. The matter is submitted. The case is Vasquez v. Astor.
judges: Fletcher B. , Pregerson, Graber